**WO**                                                                                                  SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Robert P. Torres,   )   No. CV 12-0006-PHX-JAT (DKD)
            )
      Plaintiff,   )
            )
vs.   )   **ORDER**
            )
Charles Ryan, et al.,   )
            )
      Defendants.   )
            )

    Plaintiff Robert P. Torres, an inmate in the custody of the Arizona Department of Corrections (ADC) in Buckeye, Arizona, filed this *pro se* civil rights action. (Doc. 10.) Plaintiff has filed a Motion for a Preliminary Injunction and Temporary Restraining Order, which Defendants oppose. (Docs. 28, 45, 70.) The Court will deny the motion.

**I.   Background**

    In his Amended Complaint, Plaintiff alleges denial of constitutionally adequate medical care for his Hepatitis C. (Doc. 10.) Plaintiff alleges that on May 11, 2009, Facility Health Administrator (FHA) Greeley responded to Plaintiff's letter telling him that he *should be* on a monitoring program of his HCV, but that Plaintiff did not then qualify for *treatment* under prison protocols. Shortly thereafter, Greeley told Plaintiff that he was *not* on monitoring protocols. On December 18, 2009, Health Services Administrator Clausen informed him that he met the criteria for monitoring of his HCV and that Clausen told him that he would so recommend to the Hep. C Committee. Despite these statements, Plaintiff

claims that his HCV was not monitored by medical personnel who subsequently reviewed his medical records. In addition, Plaintiff alleges that Director Ryan responded to subsequent grievances and letters sent to him, telling Plaintiff that *he* had reviewed Plaintiff's medical records and that he denied relief, despite Greeley's May 11, 2009 determination that Plaintiff should be monitored. Finally, Plaintiff alleges that Clausen's response to a 2012 medical grievance mirrored Ryan's denial of relief based on *Ryan's* review of Plaintiff's medical history. Plaintiff seeks damages and injunctive relief; specifically, Plaintiff seeks "diagnostic testing, treatment and review of testing by independent medical specialist(s)." (Id. at 18.).

The Court required Ryan and Greeley, and the Defendants who reviewed Plaintiff's medical records subsequent to May 11, 2009, i.e., after Greeley informed Plaintiff that he should be monitored, to respond to Plaintiff's claim of deliberate indifference to his serious medical needs. (Doc. 17.) Specifically, Defendants Ryan, Greeley, Lewis, King, Echeverria, and Clausen were required to respond to the First Amended Complaint. The remaining claims and Defendants were dismissed. (Id.) The Court also denied Plaintiff's first motion for injunctive relief. Plaintiff sought an order requiring contact by Defendants with him be supervised by the Court or legal representatives. He attributed his treatment on August 17, 2012,—when he was brought to the Lewis Complex to be seen by Dr. Echeverria for an injured shoulder—to a general attempt by Defendants to retaliate or intimidate him for filing this suit. Specifically, Plaintiff, a Protective Segregation (PS) inmate, alleged he was put in full restraints and taken to an area in which unrestrained General Population (GP) inmates were present and described Echeverria's acerbic and caustic manner during the medical visit. (Id.)

## II.   Preliminary Injunction and Temporary Restraining Order

### A.   Legal Standard

A preliminary injunction is an extraordinary and drastic remedy and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)). An

1  injunction may be granted only where the movant shows that "he is likely to succeed on the
2  merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that
3  the balance of equities tips in his favor, and that an injunction is in the public interest."
4  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Am. Trucking Ass'n, Inc.
5  v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). The movant has the burden of
6  proof on each element of the test. Environmental Council of Sacramento v. Slater, 184 F.
7  Supp. 2d 1016, 1027 (E.D. Cal. 2000). A Request for a TRO is governed by the same
8  general standards that govern the issuance of a preliminary injunction. See New Motor
9  Vehicle Bd. V. Orrin W. Fox. Co., 434 U.S. 1345, 1347 n. 2 (1977); Los Angeles Unified
10 Sch. Dist. V. U.S. Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1982). In addition, because the
11 function of a preliminary injunction is to preserve the status quo pending a determination on
12 the merits, Chalk v. U.S. Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988), there is heightened
13 scrutiny where the movant seeks to alter rather than maintain the status quo. Dahl v. HEM
14 Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as opposed to
15 prohibitory, injunctions are "subject to a heightened scrutiny and should not be issued unless
16 the facts and law clearly favor the moving party").

17      Under the "serious questions" version of the sliding-scale test, a preliminary
18 injunction is appropriate when a plaintiff demonstrates that "serious questions going to the
19 merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." Alliance
20 for the Wild Rockies v. Cottrell, 632 F. 3d 1127, 1134-35 (9th Cir. 2011), citing Lands
21 Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) (en banc). This approach requires that
22 the elements of the preliminary injunction test be balanced, so that a stronger showing of one
23 element may offset a weaker showing of another. "'[S]erious questions going to the merits'
24 and a balance of hardships that tips sharply towards the plaintiff can support issuance of a
25 preliminary injunction, so long as the plaintiff also shows that there is a likelihood of
26 irreparable injury and that the injunction is in the public interest." Id. at 1135

27      The Prison Litigation Reform Act (PLRA) also imposes requirements on prisoner
28 litigants who seek preliminary injunctive relief against prison officials. "Preliminary

- 3 -

1 injunctive relief must be narrowly drawn, extend no further than necessary to correct the
2 harm the court finds requires preliminary relief, and be the least intrusive means necessary
3 to correct that harm." 18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power
4 to grant preliminary injunctive relief to inmates; "no longer may courts grant or approve
5 relief that binds prison administrators to do more than the constitutional minimum." Gilmore
6 v. People of the State of Cal., 220 F.3d 987, 999 (9th Cir. 2000).

7 Generally, an injunction should not issue if it "is not of the same character, and deals
8 with a matter lying wholly outside the issues in the suit." Kaimowitz v. Orlando, Fla., 122
9 F.3d 41, 43 (11th Cir. 1997)).

### B. Parties' Contentions

#### 1. Plaintiff

Plaintiff asks the Court to enter an order directing Defendants, their agents, employees and others to (1) cease all acts of intimidation, harassment and retaliation; (2) return Plaintiff to his original state of confinement/employment; (3) provide for Plaintiff's existing and future medical needs under the supervision of impartial medical specialists not associated with Plaintiff's claim or under the supervision of Echeverria; (4) and direct that Echeverria have no further contact with, oversight of, or involvement in Plaintiff's medical testing, treatment or monitoring protocols. (Doc. 28 at 3.) In support of his request, he submits his affidavit. (Doc. 29.)

Plaintiff attests that on October 30, 2012, he was seen by Nurse Reese who advised that Plaintiff was to be transported to the Lewis Complex medical unit to see a doctor and that Plaintiff might be losing his job as a barber and moved to L-11. (Id. ¶ 2.) On October 31, he was transported to the Lewis Medical complex and advised by Health Care Provider (HCP) Ende that he would be placed in isolation, meaning confined to a single cell without property. (Id. ¶ 3.) When Plaintiff stated that he was going to be punished for asking for medical care, Ende encouraged Plaintiff to sign a form refusing medical services. Plaintiff claims that it was clear that he would be able to keep his job and housing assignment only if he signed the refusal. Plaintiff attests that he believes this was an effort to get him to give

1  up past, present, and future claims of medical care. (Id.) On November 6, Plaintiff was seen
2  by Nurse Reese who advised that he might be losing his job and moved; he was asked to sign
3  a blank limited-duty/activity form for Echeverria to fill out later. (Id. ¶ 4.)
4      According to Plaintiff, on November 7, he was given notice that he would be removed
5  from his WIPP position as a barber without cause and in violation of Arizona law and ADC
6  procedures. (Id. 5.) Reese said that she was following Echeverria's orders. (Id. ¶ 6.) The
7  WIPP Coordinator also said that he was told to remove Plaintiff from his job per doctor's
8  orders. (Id. ¶ 7.) Plaintiff told the Coordinator that this is retaliation. (Id.)
9      Plaintiff asserts that this is retaliation by Echevarria for naming him as a Defendant.
10 He asks the court to investigate and to order ADC to do the same. (Id. ¶ 8.) Plaintiff claims
11 there is a conflict of interest with Echevarria having oversight of Plaintiff health needs. (Id.)

        **2.    Defendants**

13     Defendants assert that Plaintiff's version of events is misleading. (Doc. 45 at 5.) In
14 late 2012, Plaintiff told Reese that he thought he was suffering from dementia. (Id., Ex. A,
15 Echeverria Decl. ¶ 8.) Reese consulted with Dr. Echeverria, who informed Reese that if
16 Plaintiff has dementia, and if it placed other inmates in danger, they would have to consider
17 moving him to L-11, a nursing ward at ASPC-Lewis, to provide treatment, and that if
18 Plaintiff was a danger to other inmates, Plaintiff would not be allowed to continue working
19 as an inmate barber due to the safety issues. (Id.)
20     Echeverria attests that he did not instruct Reese to relocate Plaintiff, to place him in
21 isolation, to remove him from his job, or to have him sign a blank SNO regarding limited
22 activity or duty. (Id. ¶¶ 10-12.) Defendants assert that it appears that ADC medical staff
23 attempted to relocate Plaintiff to L-11 for observation with respect to his mental health and
24 that Plaintiff refused. Staff asked that he sign a formal waiver refusing treatment to avoid
25 observation in L-11. (Doc. 45 at 5.)
26     Echeverria further attests that based on a review of Plaintiff's subsequent medical
27 records, it appears that he does not have dementia. (Id. ¶ 9.) Therefore, there is currently no
28 need to move him to L-11 for treatment or remove him from his job assignment as an inmate

- 5 -

1  barber. (Id.) Plaintiff does not have a Special Needs Order (SNO) precluding him from
2  performing his job and is currently employed as an inmate barber. (Id. ¶ 12.) And "as a
3  precautionary measure," Dr. Echeverria is no longer Plaintiff's primary physician. (Id. ¶
4  15.) Nurse Practitioner Ende is providing him any necessary medical care. (Id.)

5  Defendants argue that Plaintiff is not entitled to a preliminary injunction because the
6  claims and requested relief are unrelated to those in the First Amended Complaint. (Doc. 45
7  at 2.) In addition, Plaintiff is not seeking to maintain the status quo. (Id. at 3.) They contend
8  that Plaintiff has submitted no evidence that he is likely to prevail on the underlying claims
9  of refusal to provide treatment for his Hepatitis C. (Id. at 5.) Furthermore, even if Plaintiff
10 were moved from his present housing assignment or removed from his job, there would be
11 no constitutional violation because he has no right to a specific housing assignment or
12 security classification. (Id. at 6.) Nor does he have a right to a specific medical provider.
13 (Id. at 7.) As to an injunction for treatment, Defendants argue that Plaintiff fails to specify
14 what treatment he seeks. (Id.) Plaintiff fails to demonstrate irreparable harm. (Id. at 8.)

### 3. Reply

16 Plaintiff asserts that Echeverria has again "orchestrated a scenario of upset"
17 threatening to disrupt Plaintiff's work assignment in order to harass and retaliate against him
18 for this lawsuit. (Doc. 53 at 2.) Plaintiff contends that he did, in fact, lose his job and
19 submits a letter from the WIPP Counselor stating that Plaintiff was removed from his job
20 because the Counselor was informed by Nurse Reese that Plaintiff was not cleared to work,
21 that the Counselor was told it was a directive from the doctor handling the case and that the
22 job would not be restored without authorization from medical. (Id., Ex. A.) Plaintiff asserts
23 that this calls into doubt the accuracy of Echeverria's declaration. (Id. at 3.) He claims the
24 inmate record dated December 7, 2012 was "censored" to list his work assignment to
25 November 13, 2012 in order to confuse and that he was retaliated against and his claims are
26 not based on speculation.

27 Plaintiff argues that he is attempting to preserve the status quo and that his motion is
28 related to the claims in his First Amended Complaint. (Id. at 4.) The state and ADC prohibit

1  intimidation and retaliation. (Id. at 4.) Defendants tried to circumvent the judicial process
2  by trying to pressure and confuse a patient. (Id. at 5.)

3        Plaintiff argues that he is not seeking review of the elements and merits of his claim
4  but he is confident that he will convince a jury. (Id.) He further argues it is clear that
5  Defendants were attempting to force Plaintiff to waive medical care by threats and that
6  Echeverria admits to having discussed moving Plaintiff to L-11 and removing him from his
7  job. (Id. at 6.) When Plaintiff refused to sign the blank form, Reese acted upon her threat
8  and Reese and Ende acted at the direction of Echeverria who continues to exercise his
9  authority over others. (Id. at 6-7.)

### 4. Supplemental Response

Defendant Ryan files a supplemental response acknowledging that Plaintiff has been removed from his position as an inmate barber due to concerns regarding his mental health. (Doc. 70 at 2.) Dr. Richard Rowe attests that even though Echeverria did not believe that Plaintiff has dementia, due to concerns regarding Plaintiff's mental health, medical staff believed it would be dangerous for Plaintiff to continue working with sharp objects, so he was removed from his position as a barber. (Id., Rowe Decl. ¶¶ 6, 8.) Rowe attests that Plaintiff is housed at Lewis and receiving medical and mental health treatment. (Id. ¶ 7.)

### C. Analysis

The Court will deny Plaintiff's request for injunctive relief in all regards. Plaintiff's claim of retaliation is not of the same nature as the claims in the First Amended Complaint. A party seeking preliminary injunctive relief "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (Eighth Amendment claim cannot provide basis for preliminary injunction against alleged acts in retaliation for filing claim); see also Kaimowitz v. Orlando, 122 F.3d 41, 43 (11th Cir. 1997).

In addition, the Court is not persuaded that Plaintiff has been retaliated against. Even though Plaintiff has been removed from his position as barber, that does not establish retaliation; through the declaration of Rowe, Defendants submit evidence of a legitimate

1 penological justification for removal of Plaintiff from his job. See Rhodes v. Robinson, 408
2 F.3d 559, 567-58 (9th Cir. 2005) (a claim of First Amendment retaliation contains five basic
3 elements, including that the action did not reasonably advance a legitimate correctional goal.)
4 Notably, Plaintiff does not deny that he reported having dementia. The Court will not direct
5 Defendants to restore Plaintiff to his job as a barber.

6 Plaintiff's speculation about intimidation and harassment are insufficient to
7 demonstrate irreparable harm, and his allegations are conclusory that staff acted at the
8 direction of Echeverria to retaliate. Mere "*[s]peculative* injury does not constitute
9 irreparable harm sufficient to warrant granting a preliminary injunction." Caribbean Marine
10 Services Co., Inc. v. Baldrige, 844 F. 2d 668, 674-675 (9th Cir. 1988) (emphasis added). To
11 meet the "irreparable harm" requirement, a plaintiff must do more than merely allege
12 imminent harm; he must demonstrate it. Id. at 674.

13 As for the remaining requests for injunctive relief—to provide for Plaintiff's existing
14 and future medical needs under the supervision of impartial medical specialists not associated
15 with Plaintiff's claim or under the supervision of Echeverria; and to direct that Echeverria
16 have no further contact with, oversight of, or involvement in Plaintiff's medical testing,
17 treatment or monitoring protocols—Plaintiff has not established the need for the relief sought
18 or how any of it relates to his claim regarding treatment for Hepatitis C. As with the claimed
19 retaliation, Plaintiff has failed to establish the elements of a preliminary injunction; in
20 particular, he fails to establish irreparable harm or that he will succeed on the merits of his
21 underlying claim. Moreover, a court may not issue an injunction against individuals who are
22 not parties to a suit pending before it. Zenith Radio Corp. v. Hazeltine Research, Inc., 395
23 U.S. 100, 110 (1969). In addition, Defendants represent that Echeverria will no longer be
24 Plaintiff's primary care giver, and Plaintiff offers nothing but speculation that Ende acted at
25 the direction of Echeverria to retaliate. Finally, the requested relief is far too broad to meet
26 the requirements of the PLRA that the relief be narrowly drawn.

27 Plaintiff's motion will be denied.

28 **IT IS ORDERED that** the reference to the Magistrate Judge is withdrawn as to

- 8 -

Plaintiff's Motion for a Temporary Restraining Order and Motion for Preliminary Injunction and (Doc. 28), and it is **denied**.

**DATED this 21st day of March, 2013.**

*/s/ James A. Teilborg*
James A. Teilborg
Senior United States District Judge