**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert P. Torres,<br><br>        Plaintiff,<br><br>v.<br><br>Charles Ryan, et al.,<br><br>        Defendants. | No. CV 12-0006-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Plaintiff's Appeal of Magistrate Judge's Decision (Doc. 94) and Plaintiff's Motion Requesting an Enlargement of Time (Doc. 95). Plaintiff has also filed a supporting Memorandum of Points and Authorities (Doc. 96). Finally, Defendants have filed a response to Plaintiff's Appeal. (Doc. 97).

**I.    Background**

Plaintiff Robert P. Torres, who is confined in the Arizona State Prison Complex (ASPC), Lewis Complex, Eagle Point Unit, in Buckeye, Arizona, filed a pro se civil rights Complaint on January 3, 2012 against Defendants pursuant to 42 U.S.C. § 1983. (Doc. 1). The Court dismissed the Complaint for failure to state a claim with leave to amend. (Doc. 9). On March 19, 2012, Plaintiff filed his First Amended Complaint with this Court. (Doc. 10). On September 28, 2012, the Court dismissed Count I, ordered Defendants Ryan, Greeley, Lewis, King, Echeverria and Clausen to respond to Counts II and III, and dismissed the remaining Defendants. (Doc. 17 at 18).

On October 12, 2012, Plaintiff filed a "Request for Reconsideration" of the Court's order dismissing the remaining defendants. (Doc. 20). On December 12, 2012,

the Court denied Plaintiff's motion for reconsideration. (Doc. 31). In the order denying Plaintiff's motion for reconsideration the Court stated:

> Plaintiff otherwise seeks reconsideration to supplement or amend his First Amended Complaint in an attempt to state a claim against the dismissed Defendants. A motion for reconsideration is not the appropriate means to seek leave to supplement or amend a complaint. Instead, Plaintiff must seek leave to amend pursuant to Rule 15 of Federal Rules of Civil Procedure and LRCiv 15.1.

(Doc. 31 at 3). On February 13, 2013, in an attempt to comply with the Court's directions and file an amended complaint under Federal Rule of Civil Procedure 15, "[P]laintiff filed document 68 and attached a pre-written order granting leave to amend and simply provided information of who Plaintiff intended to include in his amended complaint." (Doc. 94 at 4). On February 27, 2013, Plaintiff filed his actual proposed second amended complaint. (Doc. 72).

On May 1, 2013, Plaintiff filed a Motion for Leave to File a Supplemental Complaint. (Doc. 74). In this document, Plaintiff requested leave to file a supplemental complaint because "information (medical records) has been received by the Plaintiff" and the occurrence of "events which are similar in nature to the violations alleged in the complaint" since the Plaintiff filed his complaint. (*Id.* at 1).

On April 18, 2013, Plaintiff filed a "Motion Requesting Court Order or Directive." (Doc. 81). In this document, Plaintiff requested that; (1) the Court "direct counsel for Defendants to ensure Plaintiff receive a complete and accurate copy of any and all document(s) filed on behalf of client(s)," and that (2) the Court order the clerk of the court to provide an updated docket sheet to the Plaintiff every thirty (30) days. (Doc. 81).

On May 10, 2013, Plaintiff filed a document titled "Plaintiff's Supplemental Complaint" alleging "ongoing deprivations of his constitutional rights." (Doc. 85).

On June 5, 2013, Magistrate Judge Duncan issued an order addressing Plaintiff's Motions for Leave to File an Amended Complaint (Docs. 68, 72), Motion for Leave to File a Supplemental Complaint (Doc. 74), and Motion Requesting Court Order or

Directive (Doc. 81). (Doc. 93 at 1). The order denied Plaintiff's Motions for Leave to file an Amended Complaint (Docs. 68, 72) and denied Plaintiff's Motion for Leave to File a Supplemental Complaint (Doc. 74). (Doc. 93 at 3). The order also struck Plaintiff's Supplemental Complaint (Doc. 85). (Doc. 93 at 3). Further, the order denied Plaintiff's Motion Requesting Court order or Directive (Doc. 81) as moot.

On June 17, 2013, Plaintiff filed a "Motion of Objection to the 6/5/13 Court Order" appealing the Magistrate Judge's Order (Doc. 94). Plaintiff's Appeal (Doc. 94) requests this Court's de novo determination of the Magistrate Judge's order denying (1) Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 72), (2) Plaintiff's Supplemental Complaint (Doc. 85), and (3) Plaintiff's Motion for Court Order or Directive (Doc. 81). Plaintiff argues that his proposed amended complaint and supplemental complaint are "by law to be reviewed and screened by the District Court Judge overseeing the case." (Doc. 94 at 6). Plaintiff also argues that the Magistrate Judge's order was based on the "misapprehension of the facts and issues and misstatements of the record." (*Id.*). In response to Plaintiff's June 17, 2013 Motion, Defendants Ryan, Clausen, Greeley, and King (the "Defendants") have filed a response to Plaintiff's Appeal. (Doc. 97).

On June 21, 2013 Plaintiff filed a Motion Requesting an Enlargement of Time (Doc. 95) and a supporting Memorandum of Points and Authorities (Doc. 96).

**II.   Standard of Review**

The Federal Magistrates Act, 28 U.S.C. §§ 631-639, "distinguishes between nondispositive matters under 287 U.S.C. § 636(b)(1)(A) and dispositive matters heard pursuant to 28 U.S.C. §636(b)(1)(B)." *United States v. Abonce-Barrera*, 257 F.3d 959, 968 (9th Cir. 2001). "Under 28 U.S.C. § 636(b)(1)(A), a district judge may designate a magistrate judge to hear any *nondispositive pretrial* matter pending before the court." *Estate of Connors v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993) (emphasis in original).

Generally, when the challenged order is non-dispositive, the standard of review used by the District Court to review the Magistrate Judge's decision is "clearly erroneous

or contrary to law." *Morgal v. Maricopa Cnty. Bd. Of Supervisors*, 284 F.R.D. 452, 458 (D. Ariz. 2012), *recons. denied*, CIV 07-0670-PHX-RCB, 2012 WL 2368478 (D. Ariz. June 21, 2012. However, legal conclusions of the Magistrate Judge are reviewed de novo. *Id.*; *Williams v. United States*, No. 08-00437, 2012 WL 406904, at *3 (D. Haw. Feb. 8, 2012).

### III. Analysis

Here, the challenged order is not dispositive because it does not "effectively dismiss" any of Plaintiff's causes of action. *See Gossett v. Stewart*, No. 08-00437 ACK-BMK, 2009 WL 3379018, at *1 (D. Ariz. Oct. 20, 2009); *Morgal*, 284 F.R.D. at 458 ("Generally, a motion for leave to amend the pleadings is a nondispositive matter that may be ruled on by a magistrate judge"). Further, because the Magistrate Judge's order consists of legal conclusions, the Court will review the Magistrate Judge's decision regarding these motions de novo.

### A. Plaintiff's Motions Regarding Leave to File an Amended Complaint (Docs. 68, 72).

Although the decision whether to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Forman v. Davis*, 371 U.S. 178, 182 (1962). "[A] court must be guided by the underlying purpose of Rule 15 – To facilitate decision on the merits rather than on the pleadings or technicalicites." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (citations omitted). Rule 15(a) provides in pertinent part:

> (1) A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . .
>
> (2) . . . a party may amend its pleading only with the opposing party's written consent **or the court's leave. The court should freely give leave when justice so requires.**

Fed. R. Civ. P. 15(a)(1)-(2) (emphasis added).

The liberal policy in favor of amendments, however, is subject to limitations. Whether to grant a motion to amend depends on five factors: bad faith, prejudice to the opposing party, futility, undue delay, and whether plaintiff has previously amended his complaint. *Western Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845-46 (9th Cir. 1995). Accordingly, the Court will first consider whether the amendment is futile.

Regarding futility, a "district court does not err in denying leave to amend where the amendment would be futile . . . or would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted). *See also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient."). Generally, to determine whether a proposed amendment is legally sufficient, courts use the same standard used to analyze a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Miller*, 845 F.2d at 214. Therefore, in analyzing whether Plaintiff's proposed amended complaint is "futile," the Court considers whether the proposed amended complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing the standard under Rule 12(b)(6)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. However, when the "facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown . . . that the pleader is entitled to relief" and, as a result, the proposed amendment is considered futile. *Id.* at 679.

In this case, Plaintiff's proposed amended complaint contains allegations against Dr. Macabuhay, Dr. White, Dr. Whaley, Facility Health Administrator ("FHA") Sloan, and Medical Investigator Mullen. (Doc. 72). The Court previously dismissed these five

individuals, along with several other individuals, in the initial screening of Plaintiff's complaint because Plaintiff failed to state a section 1983 medical claim against them. (Doc. 17).

As stated in the Court's order (Doc. 17 at 7), to state a section 1983 medical claim against these individuals, Plaintiff must show that "defendants acted with 'deliberate indifference' to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))." A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett*, 439 F.3d at 1096 (quotations omitted). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Further, deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Regarding dismissal of Drs. Macabuhay, White, and Whaley, this Court found that:

> Plaintiff does not allege what, if any, symptoms he was suffering at the various times that the above medical professionals allegedly reviewed or consulted his medical file. That is, he does not allege facts to support that the failure to do more than review his file rose to the level of deliberate indifference or was medically inappropriate. Accordingly, the above defendants will be dismissed for failure to state a claim.

(Doc. 17 at 9). Similarly, this Court found Plaintiff's allegations that Sloan and Mullen denied Plaintiff's formal grievances "insufficient to state a claim." (Doc. 17 at 10, 17). In other words, the Court found that Plaintiff's allegations, assumed true for purposes of

screening the complaint, did not support a section 1983 medical claim against Dr. Macabuhay, Dr. White, Dr. Whaley, Sloan, and Mullen. *See Iqbal*, 556 U.S. at 683 (affirming dismissal of the complaint because it did "not contain any factual allegation sufficient to plausibly suggest" a claim against defendant).

A review of Plaintiff's proposed amended complaint shows it does not allege facts that state a claim against Dr. Macabuhay, Dr. White, Dr. Whaley, Sloan, or Mullen. Plaintiff's proposed amended complaint consists almost entirely of legal conclusions and includes no facts to support those legal conclusions.[1] These allegations alone do not demonstrate facts that "support that the failure to do more than review Plaintiff's file rose to the level of deliberate indifference or was medically inappropriate." (Doc. 17 at 9). Plaintiff's only arguably 'factual' argument involves his claims regarding medical testing results. (Doc. 72 at 5). However, these allegations are insufficient to prove that the parties acted with "deliberate indifference" and as a result is insufficient to state a section 1983 medical claim.

Plaintiff alleges that on October 29, 2003, Sloan responded to Plaintiff's formal grievance and stated, "[y]our liver function test [was] normal to slightly elevated, but not twice the normal values signifying that you do not have chronic hepatitis. You have been

---

[1] Plaintiff's claims against each of the physicians contains largely the same allegations:

> [The physician] refused and or failed to properly evaluate/diagnose, monitor, or treat Torres' Hepatitis C condition . . . [the physician] refused and or failed to implement, authorize, or administer adequate monitoring diagnostic test or treatment for Torres' Hepatitis C . . . [the physician] refused and or failed to abide by ADOC's medical policies . . . as well as state and federal mandated standards of health . . . [the physician] demonstrated a pattern of delay and denial/of advertant negligence/intentional disregard of his duty, ADOC policy and Arizona and Federal Law/and of deliberate indifference to Torres' serious health needs which has resulted in the unnecessary and wanton infliction of irreparable liver damage, reduced quality of life, extra-hepatic deteriorating and debilitating conditions and related pain and suffering.

(Doc. 71 at 1-2).

informed that your [results have] to be evaluated to twice the normal value **at least three times in the past year** to be qualified for possible treatment." (Doc. 72 at 5-6) (emphasis added). On or about November 21, 2003, Plaintiff alleges he was given a laboratory test and his test results were found to be twice the normal value. (*Id.* at 7). Plaintiff alleges that this test result "[met] the ADOC's Hepatitis C guideline for treatment" as stated by Sloan. *Id.* However, as indicated by Sloan's statement, Plaintiff's lab results must be twice the normal value at least two more times in the same year in order to qualify for treatment. Therefore, Plaintiff's proposed amended complaint does not allege facts that show Dr. Macabuhay, Dr. White, Dr. Whaley, Sloan, and Mullen acted with "deliberate indifference," and as a result does not state a claim against these five individuals. Accordingly, the Court finds Plaintiff's proposed amendment futile.

Because the court has found the amendment to be futile the Court need not consider the other four factors under a 15(a) analysis. Accordingly, Plaintiff's motions regarding the proposed amended complaint are denied.

### B. Plaintiff's Supplemental Complaint (Doc. 85)

Federal Rule of Civil Procedure 15(d) allows a party to supplement his pleading to set forth transactions or events that have happened since the date of the original pleading.[2] "In other words, Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that did not exist when the original complaint was initially filed." *Womack v. GEO Group, Inc.*, No. CV-12-1524-PHX-SRB, 2013 WL 491979, at *4 (D. Ariz. Feb. 8, 2013) (citing *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir.

---

[2] Federal Rule of Civil Procedure 15(d) states:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

2010)). While Rule 15(a) explicitly requires that leave to amend be freely granted, no comparable admonition applies to motions to supplement under Rule 15(d). Rather, the Court has broad discretion when deciding whether or not to allow a party to supplement his complaint. *U.S. for the Use of Atkins v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963).

In this case, Plaintiff's supplemental complaint contains several allegations regarding conduct that occurred before Plaintiff filed his initial complaint. Because Rule 15(d) permits a plaintiff to supplement his pleading only with events that have taken place after the complaint was filed, Plaintiff's allegations regarding conduct that occurred before his complaint was filed cannot be brought in a supplemental pleading under Rule 15(d). *Alaska Airlines, Inc.*, 621 F.3d at 874. Accordingly, all claims and allegations in the supplemental complaint that do not precede the filing of the initial complaint on January 1, 2012, will not be considered.[3]

In regards to the claims and allegations in the supplemental complaint that occurred after Plaintiff filed his initial complaint, courts have held that the standard used to evaluate a motion to supplement under Rule 15(d) is the same standard used under Rule 15(a). *GEO Grp., Inc.*, 2013 WL 491979, at *5; *Ibok v. Advanced Micro Devices, Inc.*, No. 5:02-CV-01485JW, 2003 WL 25686529, at *2 (N.D. Cal. July 2, 2003); *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996); *Franks v. Ross*, 313 F.3d 184, 198 n. 15 (4th Cir. 2002); *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001). Therefore, the Court will apply the five factor test used to evaluate a motion to amend under Rule 15(a). "Leave to file a supplemental complaint should be freely granted unless there is undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or the supplement would be futile." *Womack*, 2013 WL 491979, at *5. As stated above, futility by itself can justify denial of a motion to supplement. *See Bonin*, 59 F.3d at 845-46. Accordingly, the Court will

---

[3] Out of an abundance of caution, the Court is evaluating and dismissing the allegations in the supplemental complaint because the actual supplemental complaint was in fact filed by the Plaintiff. Technically, leave to file the supplemental complaint should have been denied, but the Plaintiff did not appropriately seek leave.

- 9 -

consider first whether Plaintiff's supplemental complaint is futile.

Plaintiff's supplemental complaint contains allegations against Drs. Macabuhay, Merchant, and Ende. (Doc. 85 at 2). Similar to the claims in Plaintiff's first amended complaint, Plaintiff alleges section 1983 medical claims against these three physicians. (*Id.* at 3). As stated above, in order to state a section 1983 medical claim, Plaintiff must show that defendants acted with deliberate indifference to Plaintiff's serious medical needs. *Penner*, 439 F.3d at 1096. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835.

Plaintiff generally claims that the actions of Drs. Macabuhay, Merchant, and Ende, "constitute ongoing deprivations of [Plaintiff's] rights secured by the United States Constitution, under the Eighth Amendment, by failing to provide [Plaintiff] access to adequate medical care for his serious medical needs." (Doc. 85 at 17). The Court reads Plaintiff's supplemental complaint to consist of four main arguments against Drs. Macabuhay, Merchant, and Ende. Specifically, Plaintiff argues that the three physicians (1) ignored Plaintiff's complaints and pleas for help, (2) intentionally failed to review Plaintiff's medical file, (3) intentionally withheld appropriate "clinical decisions and actions" in order to comply with their employer's instructions, and (4) failed to provide adequate and continuous healthcare. (Doc. 85 at 17). However, Plaintiff does not allege facts to support these arguments and as a result has failed to show that these three physicians acted with deliberate indifference to a serious medical need.

First, Plaintiff argues that Drs. Macabuhay, Merchant, and Ende ignored his complaints and pleas for help. (Doc. 85 at 11-13, 16-17). However, Plaintiff does not allege facts to support this allegation. In fact, contrary to Plaintiff's allegation, the supplemental complaint indicates that on several occasions Drs. Macabuhay, Merchant, and Ende met with Plaintiff to discuss his complaints and as a result prescribed Plaintiff medication and treatment in response to those complaints. For example, on March 6, 2012 and April 17, 2012, in response to Plaintiff's complaints regarding pain, Drs. Macabuhay and Merchant prescribed Plaintiff medication for pain management. (*Id.* at

10). On August 16, 2012, Dr. Merchant issued Plaintiff a "hypoglycemic diet card" in response to Plaintiff's concerns regarding possible hypoglycemia. (*Id.* at 11). On December 21, 2012, Dr. Ende "placed [Plaintiff] on a diagnostic/monitoring protocol to determine the underlying cause of his hypertension" and prescribed Plaintiff blood pressure medication and ibuprofen. (*Id.* at 16). Accordingly, Plaintiff has failed to allege facts to support this argument.

Second, Plaintiff argues that Drs. Macabuhay, Merchant, and Ende intentionally failed to review Plaintiff's medical file. (Doc. 85 at 3, 11-13, 16-17). However, Plaintiff's supplemental complaint indicates that Drs. Macabuhay, Merchant, and Ende did in fact review Plaintiff's medical file. For example, on February 2, 2012, Dr. Macabuhay reviewed labs in Plaintiff's medical file and noted the results. (*Id.* at 9). Similarly, on October 20, 2012, Dr. Ende made an entry in Plaintiff's medical file. (*Id.* at 15). Plaintiff does not allege facts that indicate Drs. Macabuhay and Ende disregarded or failed to review any part of Plaintiff's medically record. In regards to Dr. Merchant, Plaintiff alleges that Dr. Merchant failed to review Plaintiff's medical file because he "focused solely on just two of [Plaintiff's] most recent lab results" in determining Plaintiff's health. (*Id.* at 11). However, the fact that Dr. Merchant used Plaintiff's most recent lab results to determine Plaintiff's current health does not show that Dr. Merchant failed to review Plaintiff's medical file. Accordingly, Plaintiff has failed to allege facts to support this argument.

Third, Plaintiff argues that Drs. Macabuhay, Merchant, and Ende intentionally withheld appropriate "clinical decisions and actions" in order to comply with their employer's guidelines. (Doc. 85 at 3, 12-13, 17). In other words, Plaintiff argues that these three physicians disregarded their own medical opinions regarding Plaintiff's health in order to follow their supervisors' instructions to deny Plaintiff his requested treatment. (*Id.* at 10). However, Plaintiff's supplemental complaint fails to allege any facts that indicate Drs. Macabuhay, Merchant, or Ende ignored their personal own medical opinions regarding Plaintiff's condition. In fact, statements in Plaintiff's supplemental

complaint suggest that after reviewing Plaintiff's medical file, Dr. Macabuhay and Dr. Merchant personally agreed with the course of treatment specified by the guidelines; on March 3, 2012, Dr. Macabuhay told Plaintiff that he had "no markers for liver disease or cirrhosis," and on August 12, 2012, Dr. Merchant informed Plaintiff that "the results from your last [lab tests] and the formula indicate you are doing fine and don't need treatment." (*Id.* at 10, 12). Plaintiff's claims that Drs. Merchant and Ende "changed" their whole "demeanor" after their initial consultations with Plaintiff does not support Plaintiff's argument that they disregarded their own personal medical opinions. (*Id.* at 11). *See Iqbal*, 556 U.S. at 678 (stating that in order entitle the pleader to relief, a complaint must plead more than facts that are merely consistent with a defendant's liability). Accordingly, Plaintiff has failed to allege facts to support this allegation.

Finally, Plaintiff argues that Drs. Macabuhay, Merchant, and Ende failed to provide adequate and continuous healthcare to Plaintiff. (Doc. 85 at 3, 13, 16-17). This argument is not supported by the statements in Plaintiff's supplemental complaint. For example, from January 24, 2012 to December 24, 2012, Plaintiff states he submitted sixteen separate Health Needs Requests ("HNRs") regarding various health concerns. (Doc. 85 at 9-18). Plaintiff's supplemental complaint also shows that in response to each HNR, Plaintiff met with a physician and was able to express the concerns stated in each HNR. Plaintiff has alleged no facts to show that he was denied adequate and continuous medical care. Accordingly, Plaintiff has failed to allege facts to support this allegation.

Plaintiff has failed to allege facts in the supplemental complaint that show Drs. Macabuhay, Merchant, and Ende acted with deliberate indifference to Plaintiff's medical condition. As a result, Plaintiff's supplemental complaint is futile because it fails to state a claim upon which relief can be granted. Plaintiff's motions regarding the supplemental complaint are denied.

### C.     Plaintiff's Motion For Court Order or Directive (Doc. 81)

Plaintiff requests the Court issue an order directing that counsel for Defendant provide him with a complete and accurate copy of any and all documents filed in this

matter. (Doc. 81 at 1). Plaintiff further requests that the Clerk of the Court send him his case docket sheet, at thirty-day intervals, so "Plaintiff may verify document numbers and now to verify complete and accuracies of all document filings by the parties." (Doc. 81 at 2).

Plaintiff argues that an order instructing counsel for Defendants to provide Plaintiff with copies of all documents filed is necessary to prevent "unfair tactics" on behalf of counsel for the Defendant. (Doc. 94 at 5). Federal Rule of Civil Procedure 5 requires that a party to an action serve the opposing party with courtesy copies of all papers filed with the court. In this case, there is no evidence that counsel for Defendants have failed to provide Plaintiff with copies of papers filed with the court.[4] The Court will not order counsel for the Defendant to do something that they are already required to do by the Federal Rules of Civil Procedure. Accordingly, the Court denies Plaintiff's request for court order or directive.

Plaintiff also requests this Court order the Clerk of the Court send him his case docket sheet at thirty-day intervals. (Doc. 81 at 2). Plaintiff argues that this request is reasonable to keep the Plaintiff informed of general information regarding his case. (Doc. 94 at 5). Plaintiff further argues that this request should be granted because the Clerk of the Court sends electronic copies of Plaintiff's filings to other parties and this "provision is afforded to 'some' informa pauperis litigants." (Doc. 94 at 5).

Although the Court is to "construe *pro se* filing liberally", *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), "*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record," *Jacobsen v. Filler*, 790 F.2d 1362 (9th 1986). A pro se litigant has "no greater rights than a litigant represented by a lawyer." *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). Further, "the fact

---

[4] The Court notes that Defense counsel mistakenly failed to provide Plaintiff with a "complete and accurate copy of Doc. 70." (Doc. 94 at 5). Specifically, Plaintiff did not receive the attached exhibits to Document 70. (Doc. 81 at 2). However, Defense counsel has since remedied this mistake and provided Plaintiff with a complete and accurate copy of Doc. 70 on April 29, 2013. (*Id.*).

that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required." *Ross v. Moffitt*, 417 U.S. 600, 616 (1974).

As stated above, Plaintiff is provided with courtesy copies of all documents filed by Defendants pursuant to Rule 5. The fact that the clerk provides a copy of the docket to "some informa pauperis litigants" does not support Plaintiff's argument that he is entitled to receive a copy of the docket every thirty days. (Doc. 94 at 5). 28 U.S.C.A. § 2250 requires the clerk of the court to furnish copies of certain documents and parts of the record to a petitioner applying for a writ of habeaus corpus. Because Plaintiff has not filed a habeas petition, he is not entitled to receive a copy of the docket in his case every thirty days. *See United States v. Connors*, 904 F.2d 535, 536 (9th Cir. 1990) (holding that although prisoner was proceeding in forma pauperis and was indigent, prisoner "has not filed a habeas petition, and therefore is not entitled to copies of his trial transcript at government expense"). Additionally, there is no evidence to suggest that Plaintiff has been inadequately informed or unable to receive general information or documents regarding his case. Accordingly, Plaintiff's request to receive a copy of the docket sheet at thirty-day intervals is denied.

**IV. Plaintiff's Motion for Enlargement of Time (Docs. 95)**

Plaintiff also files a motion requesting an enlargement of time to file his "Motion of Objection." However, because Plaintiff's Motion of Objection was timely filed with the Court, Plaintiff's motion requesting an enlargement of time is denied as moot.

//
//
//
//
//
//
//
//

## V. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Appeal of the Magistrate Judge's Opinion (Doc. 94) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Requesting an Enlargement of Time (Docs. 95) is denied as moot.

Dated this 6th day of August, 2013.

James A. Teilborg
Senior United States District Judge